UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHADELAND STATION APARTMENTS I, LLC, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Cause No. 1:09-cv-629-WTL-TAB<br>) |
| REALSOURCE BROKERAGE SERVICES, L.C. d/b/a REALSOURCE BROKERAGE SERVICES, LLC, et al., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## ENTRY ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Before the Court are two Motions for Partial Summary Judgment, one filed by the Plaintiffs (Docket No. 52) and one filed by the Defendants (Docket No. 59).[1] These motions are fully briefed, and the Court being duly advised, now rules as follows.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences

---

[1] The Plaintiffs have also filed a Motion to Strike (Docket No. 69). As will be explained in this Entry, that motion is **DENIED AS MOOT**.

in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

Defendants RealSource Brokerage Services, L.C. d/b/a RealSource Brokerage Services, LLC, and RealSource Equity Services, LLC, (collectively "RealSource") work with investors to investigate and create tenancy-in-common investments in large multi-family properties across the United States. In early 2005, RealSource began negotiating the purchase of an apartment complex located at 6201 Newberry Road, Indianapolis, Indiana (the "Property") on behalf of the Plaintiffs.[2] On January 6, 2005, RealSource and the Seller (who is not a party to this action) entered into a Purchase Agreement in which RealSource agreed to purchase the Property for $20,050,000. On January 18, 2005, RealSource sent the Plaintiffs a property package (the "January Property Package"), which listed the Property's purchase price as $20,625,000.

Between January and April 2005, RealSource and the Seller amended the Purchase

---

[2] To be clear, the Plaintiffs are fifteen Delaware limited liability companies: Shadeland Station Apartments I, LLC; Shadeland Station Apartments II, LLC; Shadeland Station Apartments II-A, LLC; Shadeland Station Apartments III, LLC; Shadeland Station Apartments IV, LLC; Shadeland Station Apartments V, LLC; Shadeland Station Apartments VI, LLC; Shadeland Station Apartments VII, LLC; Shadeland Station Apartments VII-A, LLC; Shadeland Station Apartments XI, LLC; Shadeland Station Apartments X, LLC; Shadeland Station Apartments XIII, LLC; Shadeland Station Apartments XIV, LLC; Shadeland Station Apartments XV, LLC; and Shadeland Station Apartments XV-A, LLC. The citizenship of each LLC's members is properly alleged in the Defendants' Notice of Removal (Docket No. 1 Ex. 16).

Agreement five times. The Fifth Amendment to the Purchase Agreement was signed on March 31, 2005, and among other things, increased the purchase price of the Property to $20,625,000 and obligated the Seller to pay RealSource a $575,000 referral fee at closing. *See* Docket No. 1 Ex. 12 at 1.

At the end of April,[3] RealSource and the Seller closed the sale of the Property.[4] On April 25, 2005, the RealSource assigned the Purchase Agreement to the Plaintiffs as tenants in common. Ultimately, RealSource was paid $525,000, the Seller's broker, Colliers Turley Martin Tucker ("CTMT"), was paid $190,000, and Scott Pollum, a CTMT employee who worked as "the designated Buyer's broker," was paid $50,000. Docket No. 53 at 6. Prior to and when RealSource received the $525,000 payment it was not licensed as a broker or salesperson under Indiana's Real Estate Broker and Salesperson Licensing Act (the "Real Estate Act"), IND. CODE 24-34.1-1 to 24-34.1-10. Nor were any of RealSource's employees or representatives licensed as either brokers or salespeople under the Real Estate Act.

In 2009, the Plaintiffs filed suit in Marion County Superior Court alleging the following causes of action: (1) fraud; (2) constructive fraud; (3) breach of fiduciary duty; (4) violation of the Real Estate Act; and (5) breach of contract. In addition, the Plaintiffs sought relief under the Indiana Crime Victim's Relief Act, IND. CODE 34-24-3-1 to -4. The Defendants properly removed the case to this Court in May 2009. Both parties have now moved for summary

---

[3] There appears to be a discrepancy about whether the transaction between the Seller and RealSource closed on April 25, 2005 or April 27, 2005. To the extent there is any dispute about this issue, it is not material.

[4] Although neither the Plaintiffs nor RealSource are clear about the final purchase price, it appears the Property was purchased for $20,625,000, as provided in the Fifth Amendment to the Purchase Agreement.

judgment on various issues and causes of action.

## III. DISCUSSION

As an initial matter, the Court notes that in their Motion for Partial Summary Judgment, RealSource asserts that Counts III, IV, and V of the Plaintiffs' Amended Complaint are barred by the applicable statute of limitations. *See* Docket No. 60 at 13-15. However, RealSource neglected to plead the statute of limitations as an affirmative defense in its Answer. In February 2011, RealSource moved to amend its Answer to add the statute of limitations as an affirmative defense; the Magistrate Judge denied RealSource's motion in May 2011. RealSource did not object to the Magistrate Judge's Order and time for doing so has now passed. Accordingly, the Court concludes that RealSource has waived any statute of limitations argument and the Court will not consider this line of argument in ruling on the parties' motions for summary judgment.[5]

The Plaintiffs have moved for partial summary judgment on two issues: (1) RealSource is "prohibited as a matter of law from receiving a broker's commission or fee on the sale of the [Property] . . . because RealSource . . . failed to comply with the [Real Estate Act]" and (2) RealSource owed the Plaintiffs a fiduciary duty. Docket No. 52 at 2.

As to the fiduciary duty issue, "RealSource concedes the existence of a fiduciary duty to Plaintiffs in connection with the Property. RealSource, as set forth herein, continues to assert that it did not breach such duty." Docket No. 60 at 28 n.39. Accordingly, as RealSource has conceded this issue, to the extent that the Plaintiffs' motion sought to establish the existence of a fiduciary duty, the Plaintiffs' motion is **GRANTED**.

With respect to the statutory issue, the Plaintiffs claim that RealSource violated the Real

---

[5] As a result, the Plaintiffs' Motion to Strike (Docket No. 69) is **DENIED AS MOOT**.

4

Estate Act because RealSource, which is admittedly not licensed under the Real Estate Act, received a commission for brokering the Plaintiffs' purchase of the Property. RealSource alleges in its cross-motion for summary judgment that its conduct falls under one of the Real Estate Act's exceptions and, therefore, its receipt of the $525,000 commission was permissible.

Section 2(a) of the Real Estate Act states:

Except as provided in:
    (1) subsection (b);
    (2) section 8(i) of this chapter; and
    (3) section 11 of this chapter;
no person shall, for consideration, sell, buy, trade, exchange, option, lease, rent, manage, list, or appraise real estate or negotiate or offer to perform any of those acts in Indiana with respect to real estate situated in Indiana, without a license.

IND. CODE 25-34.1-3-2(a). RealSource does not allege that either IND. CODE 25-34.1-3-8(i) or IND. CODE 25-34.1-3-11 applies to it. Nor does it appear to the Court that either argument would be successful. Rather, RealSource claims that the exception found in IND. CODE 25-34.1-3-2(b)(7) applies in this case. That exception states: "This [licensure] article does not apply to: . . . (7) referral of real estate business by a broker, salesperson, or referral company which is licensed under the laws of another state, to or from brokers and salespersons licensed by this state." IND. CODE 25-34.1-3-2(b)(7).

The gist of RealSource's argument is that instead of brokering the purchase of the Property (which would be impermissible as RealSource is not licensed as required by the Real Estate Act), RealSource merely referred the transaction to a licensed broker. Although RealSource implicitly concedes that it conducted "[d]ue diligence, research, investigation, and other acts" in conjunction with the Plaintiffs' acquisition of the Property, RealSource argues that its behavior was not broker-like. Docket No. 60 at 24.

5

Unfortunately there is very little Indiana case law regarding the licensing provisions of the Real Estate Act and the exceptions thereto. One of the most helpful cases is *First Federal Savings Bank of Indiana v. Galvin*, 616 N.E.2d 1048 (Ind. Ct. App. 1993), in which Galvin sued to recover a commission that First Federal Savings Bank ("First Federal") allegedly owed him because he found a buyer for a strip mall owned by First Federal. After the jury returned a verdict in Galvin's favor, First Federal appealed, arguing that pursuant to IND. CODE 25-34.1-3-2 any agreement to pay Galvin a commission was void. The court of appeals agreed that a contract made in violation of the statute was void. Thus, if Galvin's conduct included any of the activities included in the statutory definition of a broker, "he [was] not entitled to recover a commission because he [was] not licensed." *Galvin*, 616 N.E.2d at 1051. Turning to the statute, the court stated: "The activities one must be licensed to perform in order to receive a commission are: selling, buying, trading, exchanging, optioning, leasing, renting, managing, listing, or appraising real estate, or *negotiating any of those acts* or offering to perform any of those acts." *Id.* at 1052 (citing IND. CODE 25-34.1-3-2; IND. CODE 25-34.1-1-2).

Galvin claimed that he "merely acted as a 'finder' by putting First Federal in contact with a purchaser" and was thus not covered by the statute. *Id*. Ultimately, the court of appeals concluded that the statute was not intended to cover mere finders because "[a] person acting as a mere finder, without negotiating the transaction, is not performing any activities that require special knowledge or competence." *Id.* at 1053. However, the court stressed that "to avoid the licensing requirements, a person may do no more than act as a 'finder.' Once a person crosses the line and takes part in negotiating a transaction, the person is acting as a broker and must be licensed in order to receive a commission." *Id*. After reaching this conclusion, the court noted

6

that there was conflicting evidence regarding Galvin's involvement in the transaction so the lower court's denial of First Federal's motion for a directed verdict was not erroneous. However, because the lower court had also failed to instruct the jury about the Real Estate Act, the case was remanded for a new trial.

More recently, in *GDC Environmental Services, Inc. v. Ransbottom Landfill*, 740 N.E.2d 1254, 1259 (Ind. Ct. App. 2000), the court of appeals quoted *Galvin* and stated: "[I]f the plaintiff's activities concerning the sale 'included any of the acts described in Indiana Code Section 25-34.[1]-3-2 he is not entitled to recover a commission because he is not licensed.'" The court also pointed out that "in order to avoid the requirements of the [Real Estate Act] a person may *do no more* than act as a finder." *Id*. (citing *Galvin*, 616 N.E.2d at 1053). "'Once a person crosses the line and takes part in negotiating a transaction, the person is acting as a broker and must be licensed in order to receive a commission.'" *Id.* (quoting *Galvin*, 616 N.E.2d at 1053). The court also noted that although there was an issue of fact in *Galvin* that precluded a directed verdict, this did not mean that the question of whether an individual acted as a broker or merely a finder was always a question of fact. *See id.* at 1060 n.4. The *Ransbottom* court ultimately concluded that GDC, an unlicensed entity, had contracted to engage in broker-like activities in exchange for a commission. Because this agreement was in violation of the statute, it was void. *Id.* at 1060.

The Plaintiffs argue that *Galvin* and *GDC Environmental* foreclose RealSource's argument under IND. CODE 25-34.1-3-2(b)(7). They claim that RealSource has admitted that it was acting as a broker in conjunction with the acquisition of the Property. Moreover, they note that Indiana law defines "referral" very narrowly as "the act of recommending or referring a

7

sales lead that develops a client or customer." 876 IAC 1-1-3(s).

In a July 2007 letter to the Plaintiffs, RealSource representative Nathan Hanks made several statements about the $525,000 fee that indicate that RealSource did far more than recommend or refer a lead to CTMT. Hanks explained:

> In more complex transactions, including TIC type transactions such as those completed by RealSource, these types of fees are much more substantial because they cover much more substantive work. Such work may include, as in the case of RealSource, placing the property under contract, performing due diligence, developing a property package with material and relevant information for potential TIC owners to enable them to make their own independent judgments, seeking out final buyers and ultimately facilitating the closing of the transaction between the multiple buyers, seller, title and lender.

Docket No. 54 Ex. 9 at 2. Later, in the same letter Hanks stated: "RealSource Brokerage was not merely a referring brokerage but performed extensive services by negotiating the contract and amendments, identifying, organizing and presenting the Property to the potential TIC members, performing due diligence, helping to acquire financing, etc." Docket No. 54 Ex. 9 at 5.

RealSource has thus tacitly admitted that it negotiated the purchase of the Property. In Indiana, this conduct is considered "broker-like" and requires a license. As the *Galvin* court noted, "[o]nce a person crosses the line and takes part in *negotiating a transaction*, the person is acting as a broker and must be licensed in order to receive a commission." *Galvin*, 616 N.E.2d at 1053 (emphasis added). RealSource does not even acknowledge *Galvin*, which this Court considers conclusive. Viewing the facts in the light most favorable to RealSource, the Court concludes that RealSource negotiated the acquisition of the Property, which is broker-like activity. Because it is undisputed that RealSource was not licensed to act as a real estate broker in Indiana, and because its conduct far exceeded merely referring the transaction to CTMT, to the extent that the Plaintiffs' motion seeks a ruling that RealSource violated the Real Estate Act,

8

the Plaintiffs' motion is **GRANTED**.

RealSource has moved for summary judgment on Counts I, II, III, and V, arguing that it did not make any misrepresentations to the Plaintiffs regarding the Property. However, having concluded that RealSource was not entitled to earn a broker's commission, the Court cannot say as a matter of law that RealSource's act of increasing the purchase price of the Property by $575,000 and charging the Seller a "referral fee" of that amount was not a misrepresentation. Accordingly, RealSource's motion for summary judgment on Counts I, II, III, and V is **DENIED**.

Finally, RealSource moved for summary judgment on its counterclaims, which allege causes of action for unjust enrichment and account stated. RealSource claims that from 2006 through 2008, it made payments to Arlington Property Management Companies ("Arlington") on behalf of the Plaintiffs. According to RealSource, despite being aware of these payments, the Plaintiffs have failed to reimburse RealSource $370,134.84.

Turning first to the unjust enrichment claim, in order "[t]o prevail . . . a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. One who labors without an expectation of payment cannot recover in quasi-contract." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991); *see also Manns v. Richie*, 937 N.E.2d 411, 413 (Ind. Ct. App. 2010) ("To prevail on a claim of unjust enrichment, the plaintiff must establish that she conferred a measurable benefit on the defendant under circumstances in which the defendant's retention of the benefit without payment would be unjust."). "[P]rinciples of equity prohibit unjust enrichment in cases where a party accepts the unrequested benefits another

9

provides despite having the opportunity to decline those benefits." *Encore Hotels of Columbus, LLC v. Preferred Fire Prot.*, 765 N.E.2d 658, 661 (Ind. Ct. App. 2002).

RealSource has introduced undisputed evidence showing that it provided a benefit to the Plaintiffs (i.e., the payment to Arlington) and that the Plaintiffs have retained that benefit despite RealSource's requests for reimbursement. The Plaintiffs do not dispute the material facts of RealSource's claim.[6] Given that the Plaintiffs have not pointed the Court to any disputed issues of material fact that preclude summary judgment on the unjust enrichment counterclaim, to the extent that RealSource seeks summary judgment on this counterclaim, its motion is **GRANTED**.

RealSource also moves for summary judgment on its counterclaim for account stated. "An account stated is established by an agreement between the parties that all items of the account and the balance of those items are correct, together with a promise, express or implied to pay the balance." *Auffenberg v. Bd. of Trs. of Columbus Reg'l Hosp.*, 646 N.E.2d 328, 331 (Ind. Ct. App. 1995). "An agreement that the balance is correct may be inferred from delivery of the statement and the account debtor's failure to object to the amount of the statement within a reasonable amount of time." *Id*. However, when the account stated is created "when a recipient fails to object within a reasonable time to a submitted balance, each party to the transaction must view the account as a final adjustment of the respective demands between them." *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning*, 699 N.E.2d 306, 310 (Ind. Ct. App. 1998) (citations omitted); *see also Jasper Corp. v. Mfrs.' Appraisal Co.*, 287 N.E.2d 781, 782 (Ind. Ct. App. 1972) (requiring prior dealings between the parties and mutual agreement

---

[6] Indeed, the Plaintiffs' response consists solely of an argument, based on an unsigned and unexecuted contract, that they were not obligated to reimburse RealSource until the Property sold.

upon the items of the account).

RealSource asserts that it provided the Plaintiffs with a "Hillcrest Woods Summary of Operations for December, 2008" that informed the Plaintiffs they were obligated to reimburse RealSource for its payments to Arlington. *See* Docket No. 60 at 26-27. In addition, RealSource points to a June 2009 "demand letter" as evidence of an account stated. However, viewing the facts in the light most favorable to the non-moving Plaintiffs, the Court is unable to conclude as a matter of law that the Summary of Operations and the 2009 demand letters are a mutually agreed upon "final adjustment" of the demands between the Plaintiffs and RealSource. Accordingly, RealSource's motion for summary judgment is **DENIED** as to its counterclaim for account stated.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment (Docket No. 52) is **GRANTED**. The Defendants' Motion for Partial Summary Judgment (Docket No. 59) is **GRANTED IN PART AND DENIED IN PART**. The parties are reminded of their pretrial preparation deadlines as set forth in paragraph eight of the case management plan.

SO ORDERED: 07/13/2011

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.